Thank you. The next day's call for a large number of Henry Mary. Yeah. Yeah.  Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. Yeah. I don't think he heard you. Pardon? I don't think he heard you. Counsel? I'm here. Good morning, Justices. My name is James Drazen. I represent the appellate in the present case, David Ali, in the case of Lisa Ali versus David Ali. This case, Your Honors, is a case involving a post-judgment argument, a post-judgment trial, if you will, having to do with the custody of a child of the parties. In this present case, a judgment of disillusioned marriage was granted in March of 2007. It's an unusual judgment of disillusioned marriage, but it granted the parties joint custody and joint physical custody. It did not name a primary custodian. After that judgment was entered, and it was entered by agreement, shortly thereafter, all problems started arising. Within a couple of months of that original judgment, the first petition for an order of protection got filed. As I'm sure the courts swear from the appendix that I file in this case, there are a number of orders of protection that get filed after that. Shortly thereafter, that order of protection first was filed by Mr. Ali. Shortly thereafter, Ms. Ali files her petition for an order of protection. Thereafter, in January of 2008, David filed his petition to modify custody. In March of 2008, the petitioner filed her amended motion to modify custody, and a series of hearings and arguments took place for a matter of a little over two years thereafter. It resulted in the entry of, the modification of, the dissolving of certain orders of protection, which ultimately ended in May of 2009 when the court entered what I call dueling orders of protection against both parties. Clearly, these folks can't get along. These folks cannot and have not gotten through a period of months, much less a period of years, where they can get along with one another. The court heard the case with regard to custody over a matter of several days. In fact, the original hearing took place before Judge Babco. Judge Babco heard that setting, and Judge Kelly ended up coming into the case, took over for Judge Babco, read what had been done previously, and heard two more days of testimony, and after two days of testimony, entered its order. What essentially the judge did in his order was he modified the original judgment to the extent that he made David Ali the primary custodian. He maintained all other issues, specifically the split physical time and the joint custody order. It is those issues that we bring before this court today. But you're not arguing with the main physical custody. You're bringing the other issues. I'm asking, Your Honor, two things, two separate things. I'm asking that the court address, A, whether or not joint custody was appropriate. I'm not arguing that custody had to be changed because the Spett case, of course, says when both parties file their dueling motions to modify custody, the court's authorized to modify them. I'm not arguing that there's an issue that's raised under 610A. I'm arguing that whether or not the court's decision to maintain joint custody, number one, was contrary to the manifest way of the evidence. And whether it was or it wasn't, then the question number two is, was the idea of what I'll call split or revolving custody contrary to the manifest way of the evidence under these particular sets of circumstances? Those are the two issues. And as I said previously, the standard of review under Bush is whether or not it's contrary to the manifest way of the evidence. A review of 602.1 indicates that, first and foremost, for the court to introduce a joint custody award, it must find, at 602.1A, that the parties have the ability to cooperate effectively in matters relating to the child and substantially comply with prior court order. This is the poster child case for that not happening. This can't possibly happen because of the sets of circumstances that are part of this particular right. Never before have I seen, I don't know if the justices have seen, a situation where you have, I believe, it was seven or eight different orders of protection being filed, and at one point in time, mutual order of protection being entered by the court. These parties clearly can't get along. If the parties can't get along, then joint custody isn't an issue. And the court has to then go back to address those 602 factors that I set forth in my brief as a basis for who should be awarded custody in this case. Applying those factors, as I said in my brief, would clearly lead to a determination that Mr. Ali should be given sole custody of the child of the parties. Applying the factors, the 602 factors, starting with the wishes of the child and getting down to the interrelationship. You're not saying we have the authority to change the custody at this point? If we agree with you, we would just send it back for another hearing? Well, I'm saying the court could do two things. One of two things. The court could send it back for another hearing, but I believe the court has the ability to remand with directions. Now, it's going to have to remand with directions to review the prior testimony and the prior evidence that was offered for a determination of custody. First and foremost, I think this court gets to make the determination as to whether or not the award of joint custody was contrary to the manifest way of the evidence. If the award of joint custody is contrary to the manifest way of the evidence, then I believe the lower court already has enough information before us to make a sole custody determination. And that's what I'm asking the court to do, to send it back. But you're saying that as a matter of law, we not only send it back, we tell them what to do. Well, if the court determines, Your Honor, as a matter of law, that the award of joint custody was contrary to the manifest way of the evidence, then 602 comes into play. Then the only issue left is a sole custody award. And then the question is, who gets that sole custody? I set forth those factors in my brief to determine that, in our opinion, the sole custody should be awarded to my client. I don't know that the court, it's within the court's purview or even the court's desire to make that determination here. All I'm saying is that if those factors are addressed, those factors would benefit. Did the trial court make any findings, either orally or in writing, why he wasn't following Dr. Klipper and the GAL's recommendation against joint custody? And did he find, where could he find the ability of the parents to cooperate? Did he make specific findings? Well, I don't think he did, Your Honor. And actually, I have a theory, although I don't have an actuality as to why the court might have ruled that way. The GAL started off issuing an opinion quite some time ago, indicating that sole custody should be awarded to the mother, ended up changing that opinion throughout time, and actually, at the end of the testimony, indicated that nothing should be changed with regard to physical custody. And I believe the testimony was, if I recall it correctly, was because if somebody gets sole custody in this case, they're going to feel like they won. There is a body of thought in mental health counseling that in high-conflict cases, joint custody is the best result. Was that ever brought out? It was not brought out in this particular case, Your Honor. I think the cases that determine the issue of joint custody as far as our court system is concerned, indicate that joint custody can only be brought out when there's an ability to cooperate. And the reason for that doesn't have anything to do with the parties. It has to do with the child. Well, their ability to cooperate doesn't mean they cooperate with each other. They cooperate regarding the best interest of the child. Correct. But their cooperation, by definition, must be with regard to each other because they have certain decisions to be made on behalf of that child, such as educational decisions, religious decisions, non-medical procedures and the like, that all have to be made together. In order to come to the conclusion that joint custody is appropriate, the court must find that these parties can cooperate effectively with regard to those decisions. Well, those decisions were exactly the things that the parties didn't cooperate on with respect to the child during the two to three years prior to the time the court entered its order. Was there any consideration or argument by either of the parties that given the warring state of the parents, the only way that the best interest of this child could be dealt with is if the parents were kept in balance, therefore a ruling of joint custody with the shifting of physical custody? I'm guessing, Your Honor, that that was the guardian ad litem's position when she testified. I don't know that that was specifically set forth the way you've just elaborated just now, but my recollection of her testimony was that the parties are in conflict, but the testimony that came out through the course of trial was that a number of things took place in the two years between the time the case was first filed and the time the case was decided, one of which was Mr. Ali's counseling with Dr. Flipper, as Judge Wexner has previously said, and that that turned out to be a very positive thing for him with regard to understanding how he needs to change his way with respect to the child. Ms. Ali, on the other hand, canceled counseling, which was to include the child because she didn't like what the counselors were saying. In addition to that, Your Honor, she cut off phone contact between my client and the child. She did that on purpose. She did not. She refused to recognize in her closing argument where she spent a matter of maybe 10 or 15 minutes espousing the negative traits of my client, never addressing those issues which would affect the child, thereby, in my opinion, Your Honor, certifying that they're never going to be able to come to an agreement. She did not want to address the issue that her live-in boyfriend was a physical abuser to her and a threat of a physical abuser to the child, and that that wasn't going to be a problem. One of the questions that was asked of her was, what would you do if you had to make a decision between this gentleman staying inside your house or you not having custody of your child? She refused to answer that question. She absolutely refused to answer that question. So in this particular case, Your Honor, I believe this is a situation where Ms. Ali has shown she's not going to cooperate no matter what, and if the court had any inkling that maybe its decision would have taken hold or taken root, three weeks, less than three weeks after this court's decision came out in August, long before the motions to reconsider were heard, Ms. Ali filed yet another petition for an order of protection, trying to get additional relief that wasn't granted to her in this court's order. I believe, Your Honor, that the court, for all the right reasons, wanted to try and say, let's see if we can't keep this thing. Maybe, as Judge Wexler suggested, maybe because the parties are at odds with each other, if we do something like this, we'll be able to, the parties will be able to make this thing work on their own. But that clearly hadn't happened, and there was no indication that it was going to happen in the future. Is this child making it work on his own? Well, the child's going where he's supposed to go, but I think the court's aware of what the child's testimony was, and the child's testimony was that that situation, that back and forth, was traumatic for him. Now, in spite of that, the child did very, very well in school. He was doing very well in school. I believe the court indicated that the child was very eloquent when he was talking in chambers, when he testified in chambers. But he was also clear as to what his wishes were, and he was clear as to the type of stress that was being put on him by virtue of the fact that he was being bounced back and forth the way he was. Those are the factors that I think the court has to address in determining whether or not to enter a joint custody award. I think the court tried to get to the right spot by making Mr. Ali the primary custodian, tried to establish a little bit more of a framework, if you will, for the decision, and the hope was that after he established that framework, that it would be brought into place. I don't think there was anything in the record prior to that time that it would work, and certainly there was things that came up immediately after his decision, and before he denied the mutual motions to reconsider that would lead to the court to believe that, in fact, it could work. Because it wasn't going to work, Ms. Ali wasn't going to allow it to work. And based upon the cases that I've cited in my brief, that was a situation which was not tenable. I believe, Your Honors, there are numerous cases which indicate that alternating or that rotational arrangement of custody is looked at with disfavor, because it denies that child that permanency and stability that children so often need. In this particular case, what we've done now is since, at least since 2007, this child has been kind of in flux or in limbo. There have been periods of time where orders of protection have been entered, so he wasn't allowed to see his father for a period of time. Then the orders of protection were changed, and he wasn't allowed to see his father. Now we're back to, and have been back to for some time now, the situation where the child's bouncing back and forth on a week-to-week basis. Things haven't gotten better for this child since 2007. And if the issue is, and I believe it is, under 602, both 602 and 602.1, is the best interest of the child, irrespective of whether or not it will make the parties feel better, or irrespective, with all due respect to what the guardian and liable said, that it will make one party feel that they've won over another party. And I don't know if that's true or not, but I know that that's what she said. I think the court still has to look at the best interest of the child. And in this particular case, we believe it's clearly contrary to the manifest way of the evidence that a joint custody situation would work. Can I ask you this real quick? Yes, absolutely. The statute says the court shall not consider the inability of the parents to cooperate effectively in consistency in matters that do not directly affect the joint parenting of the child. Absolutely. We know in the record there's instance at the O'Fallon Police Department where there was a dispute where they were trying to transfer custody. I mean, they may have a lot of problems with each other, but what are the ones that directly affect the parenting? Well, there are many decisions that would affect the child that were causing problems. One of the decisions, Your Honor, had to do with the child who doesn't participate in a lot of outside activities, was involved in this thing called Yu-Gi-Oh. Now, quite frankly, I didn't know what Yu-Gi-Oh was either, but it's a game that you play against other people, and they have these tournaments, and actually he was playing up for his age into these different tournaments, but they couldn't get an agreement to get this child to these tournaments, which were so important to him. Mr. Ali wanted him to go, and Ms. Ali said, I'm not taking him. And so, therefore, those things didn't take place. And I believe the child even mentioned that in his testimony with the judge as well. But there were more things than that. There were things like phone calls between dad and the child. Those were cut off. I think that's a decision which Ms. Ali made, which adversely affect the relationship between the child and the father, therefore it affects the best interest of the child. The other... Oh, you can finish your sentence. The other situation had to do with picking the child up while she was under the influence of alcohol, and her boyfriend was under the influence of alcohol as well, Your Honor. I think all of those affected the best interest of the child. Thank you. Is there counsel on the other side? Thank you. We appreciate the argument of counsel, and we will review this record thoroughly. Child custody is the most important decision this court ever has to make, and we will take the matter under advisement and issue a ruling in due course.